UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMELIA ADKINS, *et al.*,

    Plaintiffs,

    v.

ERIE INSURANCE COMPANY, *et al.*,

    Defendants.

Case Number 2:24-cv-1568
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on the Motion for Partial Summary Judgment filed by Defendants Erie Insurance Company, Erie Insurance Exchange, and Erie Insurance Property & Casualty Company (collectively, "Erie"). (ECF No. 26.) Plaintiff Amelia Adkins responded in opposition (ECF No. 28) and Erie replied in support (ECF No. 32, PageID 555–59). For the reasons set forth below, the Court **DENIES** Erie's Motion for Partial Summary Judgment. (ECF No. 26.)

## BACKGROUND

This litigation arises out of the homeowner's insurance claim that Ms. Adkins filed with Erie following a severe storm in Nicholasville, Kentucky on March 3, 2023. (ECF No. 4.)

### I.    Factual Background

In July 2022, Plaintiff Amelia Adkins purchased a townhouse located at 111 May Court, Nicholasville, Kentucky 40356. (Adkins Dep., ECF No. 24-1, PageID 165.) When purchasing the property, Ms. Adkins obtained an ErieSecure Home Insurance Policy (No. Q55-6308815) from Erie, which insures damage to her property. (*Id.* PageID 167–68; ECF No. 1-5.) This policy was in effect on March 3, 2023. (ECF No. 1-5, PageID 25.) Plaintiff Justin DeSimone is Ms.

Adkins's nephew and operates a commercial and residential construction business. (DeSimone Dep., ECF No. 25-1, PageID 222, 223–24.)

Plaintiffs assert that a severe storm damaged Ms. Adkins's property on March 3, 2023. (Adkins Dep., ECF No. 24-1, PageID 171–75; DeSimone Dep., ECF No. 25-1, PageID 226–28.) Plaintiffs claim that the storm damaged the roof, siding, and shingles of Ms. Adkins's home, as well as the fence in her yard. (Adkins Dep., ECF No. 24-1, PageID 173–75; DeSimone Dep., ECF No. 25-1, PageID 226–28.) Plaintiffs assert that, to this day, water leaks into Ms. Adkins's living room when it rains because of roof damage from the March 3, 2023 storm. (*See, e.g.*, Adkins Dep., ECF No. 24-1, PageID 172–73; DeSimone Dep., ECF No. 25-1, PageID 231.)

Shortly after the March 3, 2023 storm, Ms. Adkins reported the damage to her property to Erie. (Adkins Dep., ECF No 24-1, PageID 178–79.) Mr. DeSimone met Erie's insurance adjusters for inspections of the property because Ms. Adkins was at work during those times. (DeSimone Dep., ECF No. 25-1, PageID 228.) Mr. DeSimone testified that the first adjuster examined the townhouse's roof, exterior, and interior. (*Id.* PageID 230–31.) Mr. DeSimone showed the adjuster where water leaks in the living room and offered to show him photographs and video recordings of the leakage. (*Id.* PageID 231–33.) The adjuster told Mr. DeSimone that he did not want to see photographs or video recordings and concluded that any damage to the living room ceiling was due to a bad drywall tape joint, not the March 3, 2023 storm. (*Id.*)

Mr. DeSimone was dissatisfied with the first adjuster's inspection and contacted Scott Pierce—the main Erie adjuster assigned to Ms. Adkins's insurance claim—to ask that Erie send a different adjuster to examine the property. (*Id.* PageID 233.) Mr. DeSimone offered to send the video of water leaking into the living room to Mr. Pierce, but Mr. Pierce did not want to see the video either. (*Id.*) Erie sent a second adjuster, Chris, to examine Ms. Adkins's property. (*Id.*

PageID 234.) Mr. DeSimone showed Chris where water leaks into the living room and a video of water leaking during a recent rainstorm. (*Id.*) Chris inspected the roof and said: "I know 100 percent it's raining in your living room and I know 100 percent it's leaking on your roof. Your roof is leaking." (*Id.* PageID 234–35.) Chris told Mr. DeSimone that he could not write up his report "that way" and would instead "have [the] siding replaced" and "have [Ms. Adkins] hire a roofer to come and give an estimate." (*Id.* PageID 235.) According to Mr. DeSimone, Chris explained that "when those roofers get there to give that estimate, they are going to -- air quote -- inspect the roof" and "when they do, they'll inevitably tear up the tabs on the shingles and Erie will be forced to replace your roof." (*Id.*) After Chris left the property, Mr. DeSimone told Mr. Pierce that Chris had instructed him commit insurance fraud by hiring roofers who will tear up the roof while inspecting it, and asked Mr. Pierce to handle Ms. Adkins's insurance claim properly. (*Id.* PageID 236.) Later, Chris returned to the property and removed a piece of siding without permission. (*Id.* PageID 242, 268–69.)

Erie determined that damage caused by the storm totaled $3,391.26 and, after applying the deductible, issued a check to Ms. Adkins for $1,891.26. (ECF No. 26-1, PageID 346.) Ms. Adkins hired Veterans Contracting LLC and Rio Grande Fence Company to inspect her property and provide an estimate for repairs to her roof, siding, and fence. (Adkins Dep., ECF No. 24-1, PageID 181, 201.) After inspecting the property, Veterans Contracting LLC provided estimates of $6,680.00 and $7,503.35 to repair the roof and Rio Grande Fence Company provided an estimate of $7,637.30 to repair the fence. (ECF No. 28-1, PageID 499, 502, 508.)

Erie later hired a forensic engineering company, Donan, to examine Ms. Adkins's property and create a report on the existence and cause of damage to her property. (ECF No. 26-2, PageID 352.) Donan inspected Ms. Adkins's property on August 21, 2023, and concluded that

3

the March 3, 2023 storm did not damage her roof, but did cause damage to the townhouse's vinyl and soffit siding, which is causing the leakage in the living room. (*Id.* PageID 352, 358.) Erie states that this report confirmed the findings of its previous adjusters. (ECF No. 26, PageID 334, 338.)

Ms. Adkins filed a second homeowner's insurance claim with Erie following a storm on January 9, 2024. (ECF No. 28-1, PageID 531.) A few weeks later, Erie approved replacing the siding on Ms. Adkins's property for $9,330.44. (*Id.*) After applying a $1,500.00 deductible and $1,199.17 replacement cost holdback, Erie issued a check to Ms. Adkins for $6,631.27. (*Id.*) The siding of Ms. Adkin's townhouse was replaced, but water continues to leak into the living room when it rains. (Adkins Dep., ECF No. 24-1, PageID 182, 194.)

## II.    Procedural Background

In April 2024, Erie removed this action from the Franklin County Court of Common Pleas to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.) Plaintiffs Amelia Adkins and Justin DeSimone assert state-law claims against Erie for breach of contract, bad faith, unfair and deceptive trade practices, and unjust enrichment. (ECF No. 4.)

In May 2025, Erie moved for partial summary judgment on Plaintiff's bad faith claim. (ECF No. 26.) Thereafter, Ms. Adkins filed an untimely response in opposition (ECF No. 28), which Erie objected to (ECF No. 29), but the Court ultimately accepted (ECF No. 35). Erie filed a reply in support. (ECF No. 32, PageID 555–59.) In December 2025, this Court ordered each Party to file a supplemental brief explaining which state's substantive law applies to Plaintiffs' bad faith claim. (ECF No. 35.) The Parties did so (ECF Nos. 36, 37), and Erie's Motion for Partial Summary Judgment is ripe for review.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

**ANALYSIS**

Erie moves for summary judgment on Plaintiffs' bad faith claim. (ECF No. 26.) Erie argues that it had reasonable justifications for its evaluation of Ms. Adkins's insurance claim, so there are no genuine issues of material fact with respect to bad faith and it is entitled to judgment as a matter of law. (*Id.* PageID 330.) In response, Ms. Adkins argues that Defendants mishandled

5

her insurance claim by failing to reasonably investigate the damage to her property and delaying payment for necessary repairs. (ECF No. 28, PageID 372.)

Both Parties cited Ohio law in their briefs related to Erie's Motion for Partial Summary judgment without explaining why Ohio law applies to Plaintiffs' bad faith claim. (*See* ECF Nos. 26, 28, 32.) The Court instructed each Party to submit a supplemental brief detailing which state's substantive law applies here. (ECF No. 35.) In their supplemental briefs, both Parties maintain that Ohio law applies to Plaintiffs' bad faith claim. (ECF Nos. 36, 37.) Because the Parties agree on this issue, the Court will apply Ohio law when analyzing Erie's Motion for Partial Summary Judgment. *Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d 721, 726 (S.D. Ohio 2008) (Holschuh, J.) (citing *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998)) ("When parties acquiesce to the application of a particular state's law, courts need not address choice of law questions."); *see also Blue Ash Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-cv-393, 2021 WL 916627, at *2 n.2 (S.D. Ohio Mar. 10, 2021) (Black, J.); *Med. Supply Distrib., LLC v. Goodman*, No. 2:21-cv-161, 2021 WL 9965870, at *2 (S.D. Ohio May 21, 2021) (Watson, J.).

In Ohio, insureds may bring tort claims for bad faith against insurers who do not act in good faith when handling an insurance claim. *See Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399–400 (Ohio 1994); *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983) (explaining that "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured"). An insurer "fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo*, 644 N.E.2d at 400. In other words, Ohio law provides that "to prevail on a bad faith claim, an insured must show that there was no reasonable

justification for the manner of handling or for the denying of the insured's claim." *B–T Dissolution, Inc. v. Provident Life & Accident Ins. Co.*, 123 F. App'x 159, 164 (6th Cir. 2004).

Here, Erie argues that it is entitled to summary judgment because it handled Ms. Adkins's claim in a reasonable manner by conducting two on-site inspections, estimating the property damages covered by Ms. Adkins's insurance policy, notifying Ms. Adkins of its decision in a timely manner, and issuing payment to Ms. Adkins. (ECF No. 26, PageID 330, 332, 337–38.) Erie also highlights that it hired an independent engineer who conducted an on-site investigation and issued a report confirming Erie's findings. (*Id.* PageID 332, 338.) Erie acknowledges that the Parties dispute whether certain property damage is covered by Ms. Adkins's insurance policy, but argues that this disagreement does not constitute bad faith. (*Id.* PageID 332, 339.) Erie asserts that the evidence shows it had "reasonable justification for its evaluation and assessment of Plaintiff's claimed property damage." (*Id.* PageID 330.)

When viewing the evidence in the light most favorable to Ms. Adkins, as the nonmovant, the Court concludes that Ms. Adkins has presented facts on which a reasonable jury could base a finding of bad faith. For example, Mr. DeSimone testified that the first adjuster Erie sent to inspect Ms. Adkins's property did not want to see photographs or videos of water leaking into the living room when it rained and dismissed the damage to the living room ceiling as a bad tape joint. (DeSimone Dep., ECF No. 25-1, PageID 230–33.) Mr. DeSimone offered to send a copy of the video recording to Mr. Pierce, the Erie adjuster overseeing Ms. Adkins's insurance claim, but Mr. Pierce did not want to see the video, either. (*Id.* PageID 233.) Chris, the second adjuster that Erie sent to inspect Ms. Adkins's property, inspected the roof and told Mr. DeSimone that the roof was leaking but that he "can't write it up that way." (*Id.* PageID 234–35.) Instead, Chris said he would indicate in his report that the siding needs to be replaced and told Mr. DeSimone to

hire a roofer for an estimate and "when those roofers get there to give that estimate, they are going to -- air quote -- inspect the roof" and "when they do, they'll inevitably tear up the tabs on the shingles and Erie will be forced to replace your roof." (*Id.* PageID 235.) Mr. DeSimone informed Mr. Pierce that Chris had instructed him to commit insurance fraud by having roofers tear up the roof while inspecting it. (*Id.* PageID 236.) Mr. DeSimone also testified that Chris returned to Ms. Adkins's property and removed a piece of siding without permission. (*Id.* PageID 242, 268–69.)

Erie does not provide reasonable justifications for this conduct. Instead, Erie restates that it relied on its own adjusters and experts when evaluating Ms. Adkins's insurance claim. (ECF No. 32, PageID 558.) But "Ohio law does not provide that simply employing and relying on an expert shields an insurer from a bad faith claim." *Ullman v. Auto-Owners Mut. Ins. Co.*, 502 F. Supp. 2d 737, 746 (S.D. Ohio 2007) (Frost, J.) (citing *Mundy v. Roy*, No. 2005-CA-28, 2006 WL 522380, at *4 (Ohio Ct. App. 2d Dist. Mar. 3, 2006)). Erie's reliance on its adjustors and expert "must be reasonable" and "provide reasonable justification for a denial of coverage." *Id.* Courts applying Ohio law have denied summary judgment when there is a genuine issue of fact over whether an insurer was reasonably justified in denying coverage. *See, e.g.*, *id.* at 746–47; *Keyser v. UNUM Life Ins. Co. of Am.*, No. C2-03-138, 2005 WL 2230203, at *9 (S.D. Ohio Sep. 12, 2005); *CSS Publ'g Co., Inc. v. Am. Econ. Ins. Co.*, 740 N.E.2d 341, 348 (Ohio Ct. App. 3d Dist. 2000). Here, viewing the evidence in the light most favorable to Ms. Adkins, a genuine issue of material fact remains as to whether Erie had reasonable justifications for its handling of Ms. Adkins's insurance claim. This is not to say that Ms. Adkins will prevail on her bad faith claim. Rather, this Opinion and Order recognizes only that the evidence before the Court creates a question for the jury as to whether Erie acted in bad faith.

8

Accordingly, the Court **DENIES** Defendants' Motion for Partial Summary Judgment. (ECF No. 26.)

In her opposition brief, Ms. Adkins states that Plaintiffs acknowledge "Mr. DeSimone does not currently have standing to pursue any claims against Defendants." (ECF No. 28, PageID 372–73, n.1.) She explains that Plaintiffs' counsel communicated to Defendants' counsel that Plaintiffs are willing to file a stipulation of dismissal with respect to Mr. DeSimone's pending claims and sent a proposed stipulation of dismissal to Defendants' counsel that would allow Mr. DeSimone to refile his claims or be substituted as the Plaintiff in the event that he gains standing in the future, but Defendants' counsel has not approved of the proposed stipulation of dismissal. (*Id.*) Federal Rule of Civil Procedure 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party" and that "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21; *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time.'"). Given the Court's read of Plaintiffs' Complaint and Plaintiffs' acknowledgement of Mr. DeSimone's lack of standing, the Court will **DROP** Mr. DeSimone as a party from this action in **14 days** unless a Party files a notice between now and then providing reason for the Court not to do so.

### CONCLUSION

For the reasons stated above, the Court **DENIES** (ECF No. 26) Defendants' Motion for Partial Summary Judgment. Further, the Court will **DROP** Mr. DeSimone as a party from this action in **14 days** unless a Party files a notice between now and then providing reason for the Court not to do so.

9

This case remains open.

**IT IS SO ORDERED.**

**2/20/2026**                                         **s/Edmund A. Sargus, Jr.**
**DATE**                                                 **EDMUND A. SARGUS, JR.**
                                                                **UNITED STATES DISTRICT JUDGE**